IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNIFIED SYSTEM DIVISION, BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | **8:23CV442** |
| Petitioner, | **MEMORANDUM AND ORDER** |
| vs. | |
| UNION PACIFIC RAILROAD COMPANY, | |
| Respondent. | |

This matter is before the Court the Parties' Cross Motions for Summary Judgment. Filing No. 28; Filing No. 29.    Petitioner Unified System Division, Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters ("the Union") seeks to enforce an arbitration award issued by a Public Law Board ("the PLB") under the Railway Labor Act ("RLA") reinstating David Smith ("Smith") and providing other relief.[1]  Respondent, Union Pacific Railroad Company ("U.P.") seeks an order vacating the arbitration award.  Through the RLA, Congress intended for these kinds of labor disputes to be resolved by the PLB, not the federal courts, and provided for a uniquely deferential standard of review. U.P. has not made the extraordinary showing necessary to vacate a PLB arbitration award, so the Court grants the Union's Motion for Summary Judgment, denies U.P.'s Motion for Summary Judgment, and orders enforcement of the arbitration award.

---

[1] The award at issue is PLB No. 7660, Award No. 203.  *See* Filing No. 1-1.

1

**BACKGROUND**

This case arises out of a dispute between a railroad and a union regarding an employee discipline matter. U.P. is a national railroad headquartered in Omaha, Nebraska. Filing No. 1 at 2. The Union is a national labor organization and the collective bargaining representative for the employees of U.P. *Id.* Smith is a member of the Union and was employed by U.P. as a Section Foreman. Filing No. 27-4 at 18.

This dispute arises out of allegations that Smith violated U.P.'s Drug and Alcohol Policy. Filing No. 27-4 at 18. The policy prohibits an employee from working while under the influence of alcohol and is triggered when a blood or breath test shows a blood alcohol level of 0.02 or higher while on U.P. property. *Id.* Smith first ran afoul of the policy in 2014 after testing positive for alcohol. *Id.* U.P. agreed to let Smith return to work on the condition that Smith would be terminated if he violated the policy again in the next ten years. *Id.* That condition was contained in a document called a Waiver Agreement Letter. *Id.* On July 2, 2020, U.P. administered a random breath test to Smith. *Id.* The breath test showed Smith was just over the 0.02 limit set by the policy. *Id.* Specifically, the initial test returned a blood alcohol reading of 0.029 and a confirmation test returned a blood alcohol reading of 0.022. *Id.* Smith was sent home from work pending further investigation. *Id.*

As a unionized employee, Smith's discipline had to comply with the terms of the collective bargaining agreement between the Union and U.P. Relevant here, the Union and U.P. agreed that an employee accused of violating the drug and alcohol policy "will not be dismissed or otherwise disciplined until after being accorded a fair and impartial hearing." Filing No. 27-1 at 49–52. At the hearing, U.P. had the burden of proof to show a confirmed blood alcohol reading in excess of the 0.02 limit. *Id.* at 271 (U.P.'s alcohol

rule); Filing No. 27-2 at 6 (U.P.'s alcohol policy setting the 0.02 limit); Filing No. 27-4 at 20. The hearing examiner took testimony, found that Smith had violated the terms of drug and alcohol policy, and ordered discharge. Filing No. 27-4 at 18.

The PLB disagreed, found U.P. had not met its burden of proof, and ordered reinstatement. Filing No. 27-4 at 20. The PLB acknowledged there was no fatal flaw with the testing equipment,[2] mandating cancelation of the test. Id. at 21. However, the PLB did not find U.P.'s explanation of the test credible. Id. Specifically, the calibration test for the testing equipment showed a reading of .044 when tested against a known 0.040 sample. Id. at 19. If the 0.004 margin of error was removed from Smith's confirmation test reading of 0.022, he would be below threshold for a positive test. Id.

The PLB looked to the record for an explanation from U.P.'s witness who indicated "she was confused with the numbers" and "had no experience with such a close positive finding or the implications of the deviation of the EBT[3] to the [calibration] standard in such circumstances." Id. at 20–21. Overall, the PLB concluded Smith "must be given the benefit of the doubt and return to work" because "the absence of a witness who could explain how the EBT's deviation from the [calibration] standard impacts the actual test result undermines [U.P.'s] ability to rely on the test result." Id. at 21. Without proof of a test showing Smith's BAC was above 0.02, the PLIB concluded U.P. had not met its burden of proof. Id. at 20.

---

[2] While U.P. tries to argue this statement by the PLB indicates general reliability of the test, the PLB appears to be using a term of art from the regulations, for flaws in an alcohol test that mandate cancelation of a test. See 49 C.F.R. § 40.268 ("As an employer, a BAT, or an STT, you must cancel an alcohol test if any of the following problems occur. These are 'fatal flaws.'"). The PLB was merely observing none of the problems listed in § 40.268 of the regulations were present in Smith's case.
[3] EBT stands for evidential breath testing device. See 49 C.F.R. § 40.231.

The PLB ordered reinstatement and awarded compensation for lost wages and benefits resulting from his dismissal. *Id.* U.P. refused to reinstate Smith, and the Union petitioned the Court for enforcement of the PLB award. Filing No. 1. U.P. filed a counter petition to vacate the award. Filing No. 14.

## STANDARD OF REVIEW

This case begins and ends with the standard of review. The RLA provides that minor labor disputes involving rail carriers are resolved by binding arbitration before a PLB. 45 U.S.C. § 153(i).[4] A party unhappy with the results of arbitration may seek review in federal court. 45 U.S.C. § 153(p)-(q). However, the scope of the federal court's review is limited. 45 U.S.C. § 153(q) provides that "failure of the [PLB] to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the [PLB's] jurisdiction, or for fraud or corruption by a member of the PLB making the order" are the only bases for setting aside an order of the PLB.

"[S]tatutory review of arbitration awards under the Railway Labor Act is among the narrowest known to the law." *Union Pac. R. Co. v. United Transp. Union*, 3 F.3d 255, 258 (8th Cir. 1993) (internal citations omitted). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Sullivan v. Endeavor Air, Inc.*, 856 F.3d 533, 537 (8th Cir. 2017). The PLB acts within its jurisdiction "as long as the arbitrator is

---

[4] The statutory section in question discusses the National Railroad Adjustment Board. PLBs are created by 45 U.S.C. § 153 Second, which provides "[n]othing in this section shall be construed to prevent any individual carrier . . . and any class . . . of its . . . employees . . . from mutually agreeing to the establishment of system . . . for the purpose . . . deciding disputes of the character specified in this section." The procedure and standard for federal court review is the same whether the arbitration proceeds before the National Railroad Adjustment Board or a PLB. *Id.* ("Compliance with such awards shall be enforceable by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.").

even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Even if a PLB acts within its considerable discretion, the Court can refuse to enforce the award if enforcement of the award would contravene a "well defined and dominant" public policy. *Union Pacific R. Co.*, 3 F.3d at 260. However, review for violation of public policy "does not mean . . . courts are free to overturn any award with which they disagree." *Id.* A court cannot rely "on its own consideration of the public interest" but rather must ground its analysis in "existing laws and legal precedents." *Id.* Moreover, public policy review is not an opportunity for a federal court to second guess a PLB's factual findings. *Id.*

Summary judgment is appropriate when there are no disputes of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is a proper method of resolving a motion to vacate or enforce a PLB award because the factual findings of the PLB are conclusive on the reviewing court, meaning the remaining questions are legal in nature. *Union Pac. R.R. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail, & Transportation Workers (SMART) - Transportation Div.*, 423 F. Supp. 3d 740, 743 (D. Neb. 2019) (resolving actions to enforce or vacate a PLB award on cross motions for summary judgment).

## DISCUSSION

Applying this deferential standard of review, the Court finds no basis for overturning PLB's award. U.P. makes two arguments in favor of vacating the award. First, U.P. argues the PLB exceeded its jurisdiction by requiring U.P. to subtract the margin of error from

Smith's positive test result.  Filing No. 30 at 4.  Second, U.P. argues the PLB's remedy of reinstating Smith to his position violates public policy.  Id. at 7.  Neither argument justifies vacating the award.

### A. The PLB did not exceed its jurisdiction.

U.P.'s first argument is that the PLB exceeded its jurisdiction.  At the onset, U.P. faces a daunting road.  As a reminder, a PLB exceeds its jurisdiction if, the arbitrator ignores the contract and "dispenses with his own brand of industrial justice" (*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)) or issues a decision that is "wholly baseless and completely without reason."  *Gunther v. San Diego & A. E. Ry. Co.*, 382 U.S. 257, 261 (1965).  Here, the dispute was within the scope of the collective bargaining agreement and properly before the PLB.  Filing No. 27-4 at 18; *Union Pac. R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (noting under the RLA, minor disputes between railroads and unions are resolved before the adjudgment board or PLB).  The PLB outlined the standards from the relevant provisions of the collective bargaining agreement, U.P. rules, prior arbitration decisions by PLB 7660, and Waiver Agreement Letter.  Filing No. 27-4 at 17–20.  Based on the authorities governing the relationship between U.P. and Smith, the PLB determined U.P. had the burden of proof of demonstrating a positive test.  Id. at 20.  The PLB then considered the factual record surrounding the test, concluded U.P.'s explanation was not credible, and held that U.P. did not meet its burden of proof of showing a positive test.  Id.  In sum, the PLB's decision has "a basis that is at least rationally inferable . . . from the letter or purpose of the collective bargaining agreement" and not subject to further judicial review.  *Sullivan*, 856 F.3d at 537.

6

In response, U.P. argues the PLB dispensed with its own brand of industrial justice because the PLB's decision was inconsistent with the federal regulations governing positive drug and alcohol tests of railroad employees. Filing No. 30 at 5. Specifically, U.P. argues that federal regulations preclude U.P. from subtracting the margin of error from breath tests. Id. at 7. U.P. argues the award requires it to subtract the value, rendering it contrary to law. Id. This argument fails for three reasons.

First, U.P.'s argument misreads what the arbitrator ordered. The primary regulation relied on by U.P. prevents an employer from "modifying or revising the" DOT Alcohol Testing Form. 49 C.F.R. § 40.225(b). The PLB did not find that U.P. ought to have subtracted the value at the time of the test. Rather, the PLB found that U.P.'s explanation of how the PLB should understand tests within the margin of error was not credible. Filing No. 27-4 at 20–21 (criticizing the explanation provided by U.P.). Specifically, the Union argued throughout proceedings that the proximity of the confirmation test results to limit and the confirmed margin of error cast doubt on the results. Id. at 20. However, when asked about the issue by the hearing examiner, the test operator indicated she had no experience with such a close number and was confused by the results. Id. The PLB did not find that the test operator should have altered the test results from the machine but rather should have done a better job of explaining why the test was reliable. Therefore, U.P.'s concerns about the tensions between the PLB's decision and the applicable regulations appear overstated.

Second, U.P.'s regulatory argument was never presented to the arbitrator. "[F]ederal courts do not permit a party to withhold an issue or argument during arbitration and then, upon losing, raise it to the reviewing court." *Boehringer Ingelheim Vetmedica,*

*Inc. v. United Food & Com. Workers*, 739 F.3d 1136, 1140 (8th Cir. 2014); *see also Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n*, 838 F. App'x 846, 852 (5th Cir. 2020) ("[A] party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators."). In *Union Pac. R.R. Co.*, the Fifth Circuit held that U.P. waived a jurisdictional argument based on 49 C.F.R. pt. 40 because it "failed to point out the regulation during arbitration" despite knowing "the validity of the drug test was before the PLB." *Id.* Here, the Union asserted throughout the case that the proximity of the confirmed test to the limit required subtracting the margin of error. Filing No. 27-1 at 40 (the Union's appeal form the hearing officer); Filing No. 27-1 at 12 (the Union's submission to the PLB); Filing No. 27-4 at 20. Even so, U.P. did not argue the regulation was binding on the PLB or that it precluded U.P. from subtracting the value of the margin of error. *See generally* Filing No. 27-1 at 204-14 (U.P.'s brief to the PLB). U.P.'s only reference to the regulations was a general reference to the standards for administering an alcohol test. *See id.* at 213. The failure to raise this argument was to U.P.'s detriment because the PLB was looking for an explanation regarding the reliability of the test. Filing No. 27-4 at 20–21.[5] No matter how compelling U.P.'s regulatory argument,[6] the RLA embodies Congress's judgment that minor labor disputes

---

[5] Specifically, the PLB indicated "Carrier did not present any evidence, or any explanation, for why the .004 over the standard is not properly subtracted from Claiment's .022 confirmation test result . . .. With all these questions unanswered, the Board is of the opinion that Carrier has not sustained its burden of pro[of]." Filing No. 27-4 at 20–21.

[6] Even if properly presented to the arbitrator, the Court has serious doubts regarding the merits of U.P.'s position. On their face, the cited regulations discuss the record keeping obligations for Carriers and do not reference labor disputes before a PLB. *See* 49 C.F.R. § 40.225 (providing *"an employer . . .* [is] not permitted to modify or revise the ATF . . ..")*.* This would preclude U.P. from, say, scratching out the result of the test from the machine, and replacing it with another number. However, the Court fails to see how this regulation precludes the arbitrator from assessing the reliability of the test results that are close to the limit. To the extent, U.P. argues that the arbitrator's decision falls outside the fatal flaws that mandate cancelation of a test articulated in 49 C.F.R. § 40.267, the Department of Transportation's guidance on the issue provides that if "an arbitrator's decision claims to overturn the result of a DOT drug or alcohol test on grounds contrary to DOT regulations" the test is still valid for the purpose of the regulations governing return to work but "[t]he

be resolved in arbitration "and out of the courts." *Sheehan*, 439 U.S. at 94. Judicial review under the RLA does not allow U.P. a second bite at the apple to make the arguments it wishes it had raised before the PLB.

Third, outside of the regulatory argument that was not presented to the PLB, U.P.'s jurisdictional argument boils down to an argument that the PLB's factual determination was incorrect and unsupported by the record. *See* Filing No. 38 at 3–4 (criticizing the PLB's factual findings). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for the reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (*quoting Misco, Inc.*, 484 U.S. at 39 (1987)). Here, U.P. argues that the PLB's ultimate determination was at odds with its subordinate factual findings indicating the testing equipment functioned adequately. Filing No. 38 at 4–5. Even if the Court agreed that such a finding was wrong on the merits or that deciding U.P. failed to meet its burden of proof was a foolish or silly decision, it would not provide a basis for overturning the PLB's award. The Court "is not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors." *Garvey*, 532 U.S. at 509.

---

employer may still be bound to implement the personnel policy of the arbitrator's decision in such a case." Off. Of Drug & Alcohol Pol'y & Compliance, *DOT Rule* 49 C.F.R. § 40.149 *Q&A*, U.S. Dep't of Transp. (Apr. 14, 2016), https://www.transportation.gov/odapc/part40QA/40-149. Recognizing the distinction between the safety regulation and personnel decisions, the Fifth Circuit rejected a public policy challenge to an arbitration award that voided a test for reasons not contained in § 40.149, the section of the regulations governing the Medical Review Officer's ability to cancel a positive test. *See Union Pacific Railroad Company*, 838 F. App'x at 851. Given the weaknesses in U.P.'s regulatory argument, the Court concludes this is not one of the rare cases "in which exceptional circumstances would persuade a reviewing court to consider an issue or argument that a party failed to raise to the arbitrator." *Boehringer Ingelheim Vetmedica, Inc.*, 739 F.3d at 1140.

In sum, the PLB acted within its jurisdiction, meaning the Court must enforce the award, unless the award is contrary to public policy.

**B. The PLB's order was not contrary to public policy.**

In the alternative, U.P. argues enforcement of PLB's award contravenes public policy. The Court disagrees.

First, U.P. argues the award contravenes public policy because it requires U.P. to alter test results in contravention of the applicable regulations. Filing No. 30 at 11. There are three core issues with this argument. First, the PLB's decision does not require U.P. to alter any test results, only to do a better job of explaining test results that are close to the legal limit. *See* Filing No. 27-4 at 21. Second, the regulations cited by U.P. apply to employers and U.P. does articulate a theory of how they constrain the PLB's assessment of the validity of test results in the context of an employment discipline matter. *See e.g.* 49 C.F.R. § 40.225 (providing *"an employer* . . .[is] not permitted to modify or revise the ATF . . ..")*. Third, to the extent U.P. faults the arbitrator for discounting the test results on grounds not recognized by the applicable regulations (49 C.F.R. §§ 40.268–40.269, 40.275), the Department of Transportation is clear that the regulations govern validity for the purpose of return-to-work regulations, not labor disputes in front of a PLB. *See Union Pacific Railroad Company*, 838 F. App'x at 851; Off. Of Drug & Alcohol Pol'y & Compliance, *DOT Rule* 49 C.F.R. § 40.149 *Q&A*, U.S. Dep't of Transp. (Apr. 14, 2016), https://www.transportation.gov/odapc/part40QA/40-149.

Alternatively, U.P. argues the PLB's award violates a well-defined public policy against reinstating employees who may perform safety sensitive roles while intoxicated without the proper return to work procedures. Filing No. 30 at 11. U.P. grounds its

argument in *Union Pac. R. Co. v. United Transp. Union*. 3 F.3d 255 (8th Cir. 1993). There, the Eighth Circuit voided a PLB award on public policy grounds because it ordered "reinstatement of a railroad employee to a safety-sensitive position in those cases in which the employee poses a significant risk to the public because of the danger of future substance abuse." *Id.* at 263. Specifically, the PLB was confronted with evidence that a railroad employee involved in an accident was under the influence of alcohol, marijuana, and cocaine and had "reeked of alcohol" at the hearing but ordered immediate reinstatement based on due process violations in the hearing process. *Id.* at 257, 262. The Eighth Circuit concluded there was a well-defined public policy against the employment of impaired rail workers in safety sensitive positions and the PLB violated that public policy by ordering reinstatement without compliance with the regulatory return to work requirements. *Id.* at 263.

However, the Eighth Circuit's conception of the drug-and-alcohol-related public policy exception was not boundless. The Court specifically recognized "if the Board had reinstated Madison after finding that the allegedly positive test results were invalid due to faulty testing procedures or some other reason, we would be obliged to enforce the award." *Id.* at 262. The Supreme Court's decision in *Misco* illustrates this distinction. There, a papermill worker was discovered with marijuana in his car and discharged. 484 U.S. at 33. The arbitrator ordered reinstatement, finding the company had not met its burden of proof of showing the worker used marijuana on company property. *Id.* at 34. The Fifth Circuit vacated the award based on a public policy against the operation of heavy machinery while intoxicated. *Id.* The Supreme Court reversed, holding in part, that

the Fifth Circuit had engaged in inappropriate fact finding by substituting its own judgment about whether the worker had used marijuana on the job for the arbitrator's. *Id.* at 44.

Here, the circumstances are closer to *Misco* than *United Trasp. Union.* because the PLB found U.P. had not met its burden of proof of showing a positive test. Unlike *United Transp. Union*, where the arbitrator made no factual findings regarding the employee's use of drugs and ordered reinstatement based on due process concerns, here, the PLB specifically found that the test could not be relied upon to establish intoxication. *Compare* 3 F.3d at 257 (ordering reinstatement based on procedural due process concerns) *with* Filing No. 27-4 at 21 ("Carrier has not sustained its burden of proving that Claimant's .022 EBT reading on the July 2 confirmation test was sufficient proof of a positive test result to establish a violation of Rule 1.5."). Finding that Smith's reinstatement would violate public policy would require the court to discount the factual findings of the PLB and replace them with its own. This inquiry "exceeds the authority of a court asked to overturn an arbitration award." *Misco, Inc.*, 484 U.S. at 45. Because the PLB "reinstated [Smith] after finding that the allegedly positive test results were invalid due to faulty testing procedures *or some other reason*" the Court "is obliged to enforce the award." *Union Pacific R. Co.*, 3 F.3d at 262 (emphasis added).

In any event, even if the Court were permitted to ignore the PLB's finding regarding the test, the Department of Transportation's extensive regulatory scheme in this area counsels against vacating the award on public policy grounds. The Supreme Court has cautioned that lower courts should "hesitate to infer a public policy in this area that goes beyond the careful and detailed scheme Congress and the Secretary have created." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 67 (2000).

Here, Congress and the Department of Transportation have spoken extensively regarding the use of alcohol by transportation employees in safety sensitive positions. Specifically, the Department of Transportation mandates the completion of a "Return to Duty Process" upon "a DOT alcohol test with a result indicating an alcohol concentration of 0.04 or greater." 49 C.F.R. § 40.285(b). Likewise, a regulated employee violates the alcohol regulations and risks removal from railroad service by "report[ing] for regulated service . . . [h]aving 0.04 or more alcohol concentration in the breath or blood." 49 C.F.R. § 219.101–04.

The removal from duty hearing procedures, substance abuse evaluations, and return to duty procedures do "not apply to Federal alcohol tests indicating an alcohol concentration of less than 0.04." *Id.* Nor do the regulations mandate removal from service or return to work requirements for repeat offenders of a carrier's drug and alcohol rules. *E. Associated Coal Corp.*, 531 U.S. at 66 (rejecting a public policy challenge to the reinstatement of a repeat offender because the agency had not adopted a recidivism rule). The Department of Transportation addresses tests indicating a BAC between 0.02 and 0.04, indicating that such employees must not "perform regulated service for a railroad" until the start of the regulated employee's next regularly scheduled duty period" but such a test "is not a violation of this section." *Id.* §§ 219.101(4)(i)-(ii).

These regulations, taken together, indicate that the Department of Transportation under its authority delegated by Congress made a policy choice to tie violation of the regulations to a test showing a BAC of 0.04. Here, Smith's confirmation test indicated a BAC of 0.022, well below the line set by the agency. Filing No. 27-4 at 18. Therefore, Smith's test, even if accepted by the PLB as accurate would not violate the regulations,

trigger a removal from regulated service, or mandate completion of the return-to-duty procedures. At most, the regulations require that Smith be sent home until his next scheduled duty period, something that occurred in this case. *See* 49 C.F.R. § 219.101(a)(4)(ii); Filing No. 27-4 at 18. Indeed, at the time of the PLB's order, Smith had been out of service for two and a half years. Because the PLB's reinstatement order "violates no specific provision of" the Department of Transportation's detailed regulations concerning alcohol testing and return to work, the Court lacks the "explicit, well defined, dominant public policy" needed to vacate the PLB's award. *Eastern Associated Coal Corp.*, 531 U.S. at 66–67 (internal citations omitted).

Resisting this conclusion, U.P. argues that the Court can vacate the award on public policy grounds because the PLB's decision requires reinstatement without completion of U.P.'s return to work rules. Filing No. 38 at 8; Filing No. 30 at 12. The Court recognizes U.P.'s interest in preventing substance abuse in the workplace. Moreover, under the applicable regulations, U.P. is free to adopt more restrictive policies regarding alcohol in the workplace. *See* 49 C.F.R. § 219.101(a)(4)(ii). However, U.P. rules are just that, rules promulgated by a single company that do not have the force of positive law like a statute or a regulation. *Id.* ("[W]hile a Federal test result of 0.02 or greater but less than 0.04 is a positive test and may be a violation of a railroad's operating rules, it is not a violation of this section."). Therefore, even if the Court thought U.P.'s approach was a good idea, vacating the PLB's decision on that ground would be ascertaining public policy based on the Court's "general considerations of supposed public interests" not "laws and legal precedents." *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). U.P.'s internal

14

policies are insufficient to establish an explicit, well defined, and dominant public policy, especially when Congress and the Department of Transportation have extensively regulated the area without adopting U.P.'s approach.

In sum, the Court declines to vacate the PLB's award on public policy grounds. U.P.'s public policy arguments would require the Court to engage in improper fact finding and are not supported by the detailed regulatory scheme created by the Department of Transportation.  Therefore, the PLB's award should be enforced.

## C. Remedies- backpay, pre-judgment interest, and attorney's fees.

The Union moves for backpay and interest. U.P. does not present any argument regarding the propriety of backpay or interest, likely waiving the issue.  *See W. Point Auto & Truck Ctr., Inc. v. Klitz*, 492 F. Supp. 3d 936, 942 (D. Neb. 2020) ("A party's failure to brief an issue raised in a motion may be considered a waiver of that issue.").  However, given the deferential scope of review under the RLA, the Court will address whether such an award is within the scope of the Court's authority.  *See Union Pacific Railroad Company*, 423 F. Supp. 3d at 746 (declining to award backpay when the PLB's award explicitly declined to award backpay*); MidAmerican Energy Co. v. Int'l Bhd. of Elec. Workers Loc. 499*, 345 F.3d 616, 623 (8th Cir. 2003) (same).  Here, unlike *SMART* and *MidAmerican*, the PLB's award requires U.P. to "be compensated for actual loss of straight time wages and benefits resulting from his dismissal."  Filing No. 27-4 at 21.  Smith's loss of back wages during the pendency of judicial review "result[ed] from his dismissal" and, therefore, an award of backpay falls within the scope of the Court's authority.  However, the record is currently silent on the amount of backpay owed and the Court would appreciate U.P.'s position on the Union's arguments regarding prejudgment interest.

Therefore, the Union should submit a properly supported motion establishing the amount of backpay owed, the propriety of prejudgment interest, and proper prejudgment interest rate within 30 days of this order.

Finally, the Union moves for reasonable attorney's fees. 45 U.S.C. § 153 First(p) provides that the prevailing party in a motion to compel enforcement of a PLB award "shall be allowed a reasonable attorney's fee." Given the mandatory language of the statute and lack of argument from U.P. regarding fees, the Court concludes that the Union is entitled to reasonable fees. The Union shall file a properly supported motion for fees, consistent with D. Neb. Civ. R. 54.3 and 54.4, within 30 days of this order.

## CONCLUSION

The Court recognizes that U.P. is unhappy with the merits of the PLB's decision. However, this case serves an important reminder that, in RLA cases, arbitration, not collateral review in federal court, is the main event. Carriers and unions should ensure they present their best case and arguments before the PLB because it is extremely difficult to correct any litigation mistakes on collateral review in federal court.

Because U.P. provides no reason for the Court to conclude the PLB exceeded its authority or that its order is contrary to public policy, IT IS ORDERED:

1.  The Union's Motion for Summary Judgment (Filing No. 28) is granted.

2.  U.P.'s Motion for Summary Judgment (Filing No. 29) is denied.

3.  U.P. is ordered to comply with PLB No. 7660 Award No. 203.

4.  The Union shall, within 30 days, submit a properly supported motion for backpay and prejudgment interest. Along with the amount of backpay owed, the parties should address: (1) the propriety of prejudgment interest under the

RLA, (2) the propriety of prejudgment interest under the facts of this case, and (3) the appropriate interest rate to use to calculate any prejudgment interest owed.

5. The Union shall, within 30 days, submit a properly supported motion for reasonable fees.

Dated this 25th day of October, 2024.

> BY THE COURT:
>
> s/ Joseph F. Bataillon
> Senior United States District Judge